UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FLORENCE D. CUNNINGHAM            )
                                  )
            Plaintiff,            )          Civil No. 05-1280-KI
                                  )
            v.                    )          OPINION AND ORDER
                                  )
JO ANNE B. BARNHART,              )
                                  )
            Defendant.            )
_____   )

TIM WILBORN
Wilborn & Associates
2020-C S.W. 8th Avenue
West Linn, Oregon 97068-4612
        Attorney for Plaintiff


KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon   97204-2904

MICHAEL McGAUGHRAN
Regional Chief Counsel
RICHARD A. MORRIS
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington   98104-7075
        Attorneys for Defendant

KING, DISTRICT JUDGE:

Plaintiff Florence Cunningham seeks judicial review of the Social Security Commissioner's final decision affirming her cessation of Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  The Commissioner's final decision is REMANDED FOR FURTHER PROCEEDINGS.

## PROCEDURAL BACKGROUND

Born in 1959, Cunningham filed for SSI on April 13, 1998.  Tr. 54-56.[1]  After two hearings before an Administrative Law Judge (ALJ), Cunningham was granted benefits on September 24, 2001 due to concentration difficulties stemming from foot pain.  Tr. 421-433. This disability decision is the "comparison point decision" in the present proceedings.  Tr. 20. `On April 30, 2003, the Social Security Administration found that Cunningham's condition improved and that she was no longer entitled to benefits.  Tr. 21.  An ALJ affirmed this decision on March 31, 2005.  Tr. 20-30.

Cunningham alleges disability due to foot pain.   Tr. 63, 421.  Cunningham contends she has been unable to work due to these impairments since October 31, 1997 with no improvement. Tr. 54, 421, 553.  Between 2001 and 2005, when the record closes, Cunningham was employed by Senior and Disabled Services as an in-home caregiver for elderly clients.  Tr. 523, 779, 785.

---

[1] Citations "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer on December 22, 2005 [Docket # 11].

2 - OPINION AND ORDER

## MEDICAL BACKGROUND

On September 21, 2001 an ALJ found that Cunningham's impairments included "polysubstance abuse, in sustained full remission (by patient report), and first metatarsul cuneiform arthrosis of the left foot." Tr. 431. The record contains no diagnosis of major depression prior to September 21, 2001. The ALJ found Cunningham's concentration impaired by her foot pain, but included no mental impairments in his findings. Tr. 430-32.

Subsequent to the ALJ's 2001 decision, medical records show that Cunningham reported foot pain to her treating physician in February 2002, March 2003 and November 2003. Tr. 528, 576, 644. The record does not reflect further evaluation or treatment for this pain. *Id.* An examining physician in August 2003 found assessed Cunningham with "status post resection of an exostosis at the left first metatarsal joint," degenerative joint disease of the left foot first metatarsal tarsal joint, deep peroneal neuropathy, pes planus,[2] leg length discrepancy, and slightly diminished left heel cord reflex." Tr. 605.

During the relevant period Cunningham was enrolled in a drug therapy program. Tr. 660-762. The record reflects that between April 2003 and August 2004 Cunningham missed 29 drug treatment therapy sessions. Tr. 660, 662-63, 666, 668-71, 673-74, 676, 678,9, 681, 684, 687, 690, 703, 705, 706, 707, 709-10, 712-13, 715, 718, 721-22. In September 2003 an examining psychologist assessed Cunningham with "major depression disorder, recurrent, mild in severity" and a pain disorder. Tr. 615. A physician's assistant prescribed Paxil for this

---

[2] Pes planus is "an abnormal but relatively common condition characterized by the flattening out of the arch of the foot. Also called flatfoot." *Mosby's Medical, Nursing, and Allied Health Dictionary* (Anderson et al. eds., 5th ed. 1998).

3 - OPINION AND ORDER

disorder. Tr. 645. The record does not indicate that Cunningham attended mental health therapy for her depression.

## DISABILITY ANALYSIS

This is a benefits cessation case. Here, the Commissioner must show a claimant has experienced medical improvement since the decision granting the claimant disability benefits. 20 C.F.R. § 416.994(b). In determining improvement, the Commissioner engages in a sequential process encompassing between one and seven steps. Each step is potentially dispositive. 20 C.F.R. § 416.994(b)(5). Cunningham challenges the ALJ's evaluation of the evidence and his conclusions at steps six and seven.

At step one, the ALJ determines if the claimant's impairment meets or equals a listing. 20 C.F.R. §§ 416.994(b)(5)(I). If the impairment meets or equals a listing the claimant remains disabled. *Id.*

At step two, the ALJ must consider whether the claimant has experienced medical improvement. 20 C.F.R. § 494.994(b)(ii) If the claimant has not experienced improvement, she remains disabled. *Id.*

If adjudication proceeds beyond step two, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 416.920(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can

perform her past relevant work at step three, or perform work in the national economy at step seven.

At step three, the ALJ determines if the claimant's medical improvement is related to her ability to do work activity. 20 C.F.R. § 416.994(b)(5)(iii). If no change has occurred in the claimant's RFC since the comparison point decision, she remains disabled. *Id.*

At step four, the ALJ considers whether certain exceptions apply to his finding. 20 C.F.R. § 416.994(b)(5)(iv). These exceptions consider new diagnostic techniques, an erroneous previous decision, fraud, a claimant's failure to co-operate with the agency, or failure to follow prescribed treatment. apply. 20 C.F.R. §§ 416.994(b)(3). If these exceptions do not apply, proceedings continue.

If proceedings reach step five, the ALJ must determine if the claimant's combined current impairments are severe. 20 C.F.R. § 416.994(b)(5)(v). When the evidence shows that all current impairments in combination do not significantly limit a claimant's ability to do work, the claimant is no longer considered disabled. *Id.*

At step six, the ALJ assess the claimant's current ability to do substantial gainful activity (SGA) she has performed in the past (i.e. past relevant work). 20 C.F.R. § 416.994(b)(5)(vi). If the claimant is able to perform such SGA, she is not disabled.

At step seven, the ALJ must consider whether the claimant may perform other work in the national economy. 20 C.F.R. § 416.994(b)(5)(vii). If the claimant is found able to perform such work, the disability has ceased. *Id.*

As in disability determination cases, the initial burden of establishing disability rests upon the claimant. *Tidwell v. Apfel*, 161 F.3d 599,601 (9th Cir. 1998); *Patti v. Schweiker*, 669 F.2d 582, 587 (9th Cir. 1982). However, for purposes of determining if disability has ended, the claimant is also entitled to a presumption of continuing disability, requiring the Commissioner to produce rebuttal evidence. *Patti*, 669 F.2d at 586-87. This presumption of continuing disability does not affect the ultimate burden of persuasion, which remains on the claimant, to prove entitlement to disability insurance benefits. *Tidwell*, 161 F.3d at 601; *Patti*, 669 F.2d at 587.

## THE ALJ'S FINDINGS

The ALJ found that Cunningham "has experienced medical improvement as shown by a decrease in medical severity that was present at the comparison point decision." Tr. 29. The ALJ found that Cunningham retains the residual functional capacity "to perform light exertion work with some postural limitations." Tr. 30.

A vocational expert testified that a claimant with this RFC could perform Cunningham's past relevant work as a cashier and "caregiver/housekeeper." Tr. 813. The ALJ accordingly affirmed the Agency's decision that Cunningham's disability ceased on April 30, 2003. Tr. 30.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the ALJ's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v.*

*Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)).  The reviewing court "may not substitute its judgment for that of the Commissioner."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Cunningham contends the ALJ erred in finding medical improvement and suggests the ALJ also erred in finding she could continue to perform substantial gainful activity (SGA). Cunningham then suggests the ALJ failed to accurately assess her RFC because the ALJ did not properly address the medical evidence and did not properly consider her ability to maintain sustainable employment.

### I.      Cunningham's Credibility

Cunningham suggests the ALJ erroneously found her "not entirely credible."  Plaintiff's Opening Brief, 13.  Cunningham testified that she cannot work more than three hours per day. Tr. 782.  She also testified that she cannot walk for more than "maybe 30 minutes" and that she doesn't "really lift anything."  Tr. 794-95.

The ALJ found her statements "not entirely credible" based upon her activities of daily living, her work history, possible secondary gain, and Cunningham's non-compliance with drug treatment.  Tr. 25-26.

###### a. *Credibility Analysis*

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding symptom severity. *Smolen v. Chatter*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In making his credibility findings, the ALJ may consider the claimant's treatment history and observations of physicians regarding symptoms. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Id.* Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.*

###### b. *Cunningham's Activities of Daily Living*

The ALJ considered Cunningham's activities of daily living as reported by Cunningham and her sister. Tr. 25. The ALJ observed that Cunningham drives to work and swims one or two times per week. Her hobbies include tending houseplants, yoga, sewing, and playing video games. *Id.* The ALJ also noted that Cunningham watches television four to five hours per day, and can remember and discuss programs watched. *Id.* On a typical day, Cunningham dresses, visits the Methadone clinic, and goes to her job. *Id.*

The ALJ may indicate such discrepancies between reported daily activities and alleged impairments. *Smolen*, 80 F.3d at 1284. A claimant's daily activities may suggest the claimant

retains an ability to perform work activities.  *Orteza*, 50 F.3d at 750.  The ALJ appropriately cited these activities in his credibility assessment.

       *c.*       ***Cunningham's Work Activity***

       The ALJ cited Cunningham's work activities in his credibility finding.  Tr. 27.  Daily activities in credibility discussions frequently illustrate whether a claimant's activities are comparable to work activity.  These activities are discussed above.  Cunningham engaged in part time work throughout the period in question.  Cunningham testified at her hearing that she worked 15 hours per week.  Tr. 785.  The record shows that she reported working between 35 hours per week and "full time" in August and October 2003.  Tr. 664, 697, 701, 711.  The ALJ may appropriately consider such activity in a cessation case.  *Katz v. Secretary of Health and Human Services*, 972 F.2d 290, 293 (9th Cir. 1992).  Limited work activity may also show a claimant is capable of doing more substantial work. 20 C.F.R. § 416.971.  The ALJ's reference to Cunningham's work activity in his credibility finding is sustained.

       The ALJ also suggested that Cunningham's activities were motivated by secondary gain. Tr. 27.  Generally, this court does not sustain such inference.  By definition, applications for disability insurance is an application for financial assistance.  If desire or expectation of obtaining benefits were sufficient to discredit a claimant, no claimant would be found credible. *Ratto v. Secretary of Health and Human Services*, 839 F. Supp. 1415 at 1428 - 29 (D. Oregon 1993).  The ALJ's inference of secondary gain is not sustained.

### d. *Cunningham's Non-Compliance With Treatment*

Cunningham suggests that a claimant cannot be faulted for failing to comply with mental health treatment. Plaintiff's Reply Brief, 6, *citing Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). The *Nguyen* claimant failed to seek mental health treatment for depression until late in his proceedings. *Nguyen*, 100 F.3d at 1465. Cunningham's failure to comply with ongoing treatment, described above and cited by the ALJ, regards drug and alcohol treatment, not a diagnosis of depression. Tr. 28. This court distinguishes between such failure to seek initial treatment and failure to follow treatment. Cunningham does not establish that the *Nguyen* analysis extends to drug and alcohol treatment. For this reason, Cunningham's submission fails.

For the reasons above, the ALJ's credibility determinations regarding Cunningham's activities of daily living, work activity, and failure to seek treatment are sustained.

## II. Medical Source Statements

Cunningham does not specify what aspect of the medical record fails to show improvement. She cites an examining physician who allegedly restricted her to sedentary work. Plaintiff's Opening Brief, 8. She also cites a physician's assistant's report of high blood pressure and an examining psychologist's depressive diagnosis. Plaintiff's Opening Brief, 10.

### a. *Examining Physician Dr. Ogisu*

Cunningham submits that the ALJ "ignored" examining physician Dr. Ogisu's alleged restriction to sedentary work. Cunningham suggests the ALJ failed to adhere to agency regulations regarding a physician's full opinion. Plaintiff's Opening Brief, 8.

In August 2003, Ogisu found:

> There is no basis for any restriction to sitting.  The patient should
> be able to stand and walk for at least 2 hours out of an 8-hour day
> and lift and carry 10 pounds on an occasional basis.  There is no
> restriction to manipulations.  She is able to hear and speak without
> difficulty.  She is able to drive.  An assistive device is not required
> for ambulation.

Tr. 605.

An ALJ is not required to incorporate every aspect of a physician's opinion.  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  Here, the ALJ noted that Ogisu did not restrict Cunningham to sitting, though Ogisu suggested she cannot frequently lift 10 pounds.  Tr. 28.  Such a lifting restriction is equivalent to sedentary work.  20 C.F.R. § 404.967(a).

No treating, evaluating, or reviewing physician, before or after the September 2001 comparison date decision, suggested Cunningham is limited to lifting ten pounds.  Tr. 111-126, 144-47, 155-56, 171-77, 179-84, 244-250, 256-59, 575-576, 618-625.  Generally, a treating physician is accorded greater weight than an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Furthermore, an ALJ is not required to accept an examining physician's contradicted decision.  *Id.*  For this reason, Cunningham's submission that the erroneously rejected Ogisu's work restriction fails.  The ALJ's assessment of Ogisu's opinion is sustained.

### b.  OHSU Clinical Records

Cunningham's post comparison date medical care between April 1998 and March 2004 was conducted by a treating physician and physician assistants.

In October 2002, Cunningham's treating physician, Dr. Sprague, found her previously elevated blood pressure "completely normal."  Tr. 576.  Sprague made no finding regarding any depressive diagnosis.  *Id.*

Cunningham's March 2003 annual examination showed that she ceased taking blood pressure medication. Tr. 588. Cunningham also complained of foot pain and said she could not take ibuprofen because it bothered her stomach. *Id.* She ceased cortisone injections because they caused joint atrophy. *Id.* The a physician's assistant referred Cunningham to a podiatrist for further evaluation. Tr. 589.

In October 2003, a physician's assistant, Laura Hanks, assessed "major depression with panic disorder and insomnia," left foot pain "probably due to degenerative joint disease" or leg length discrepancy, a "history" of high blood pressure with normal clinical findings and hyperlipidemia. Tr. 645. A physician's assistant is not an acceptable medical source. 20 C.F.R. § 416.913(d)(1). As such, her testimony is evaluated as lay witness testimony. A lay witness may make observations, but may not make medical diagnoses. *Nguyen*, 100 F.3d at1467. The ALJ appropriately cited Hanks' observations and was not required to credit her diagnoses in his findings. Tr. 24.

December 2003 clinic notes show Cunningham taking Paxil and Trazadone. Tr. 643. Clinical notes also show Cunningham's hyperlipidemia "improved" and another podiatry referral. *Id.*

These notes make no reference to concentration difficulties stemming from Cunningham's foot pain. These notes do not suggest Cunningham was incapacitated by her foot pain. The ALJ reasonably found that these notes reflected improvement in Cunningham's foot pain as evaluated on September 24, 2001. Tr. 23-24, 29. This court affirms such a reading of the record supported by substantial evidence. *Batson*, 359 F.3d at 1193. The ALJ's improvement finding is sustained.

12 - OPINION AND ORDER

Cunningham relies upon examining psychologist Katie Ugolini, Ph.D. in establishing her depression as an impairment. Plaintiff's Opening Brief, 10. Ugolini's July 2001 report assessed Cunningham with a pain disorder, a cognitive disorder, opioid dependence (on agonist therapy), polysubstance dependence in sustained full remission (by patient report), and histrionic and dependent personality features. Tr. 377. Ugolini did not diagnose a depressive disorder in 2001. *Id.* Additionally, the medical record does not show evidence of major depression prior to the September 2001 comparison date. Tr. 111-129, 137-142, 144-147, 159, 164, 179, 180, 204-206, 207-208, 244-261. Therefore, Cunningham's depression cannot be found "improved" or "not improved" in comparison. Cunningham's depression is evaluated as a new impairment. *See* 20 C.F.R. § 416.994(b)(1)(v).

In September 2003 Ugolini assessed "major depressive disorder, recurrent, mild in severity," as well as the other diagnoses cited above. Tr. 615. The ALJ cited Ugolini's evaluation, but noted it was not based upon clinical testing. Tr. 25. In finding that "there are no additional notes about the status of the claimant's symptoms in this regard, and most definitely there are no treatment notes" the ALJ fairly compared examining psychologist Ugolini's opinion with Cunningham's treating practitioners. Tr. 25, *Edlund*, 253 F.3d at 1157. Cunningham additionally fails to establish that Ugolini's assessment meets or equals listing-level severity. For these reasons, Cunningham's submission regarding depression fails.

### c. The ALJ's Duty to Develop the Record

Cunningham suggests the ALJ had a duty to develop the record regarding Ogisu's comment that Cunningham exhibited "slightly diminished left heel cord reflex." Tr. 605. Ogisu stated, "Although her low back problems are probably mechanical and due to leg length

13 - OPINION AND ORDER

discrepancy and hyperpronation, this finding in particular brings up the possibility of radicular involvement." *Id.* The ALJ noted this observation and found "there is no evidence showing further workup to rule out radicular involvement. Therefore, I find there is no confirmation of a radicular involvement on the claimant." Tr. 23.

The ALJ's duty to develop the record is triggered when evidence is insufficient or when ambiguities arise. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), *Armstrong v. Commissioner*, 160 F.3d 587, 590 (9th Cir. 1998). Social Security regulations require the ALJ to assist the claimant in developing a complete record. *Id.*

The record is sufficiently developed. The post-comparison date record includes clinical notes, test results, and letters submitted by treating and examining physicians. Tr. 588-598, 640-657. Cunningham's treating physician did not suggest any radicular or spinal component to Cunningham's foot pain during the period in question. Tr. 575. A treating physician's opinion is entitled to deference. *Edlund*, 253 F.3d at 1157. Cunningham's submission that the ALJ failed to develop the record fails.

In conclusion, the ALJ applied the proper legal standards in reaching his light RFC assessment. This court sustains the ALJ's RFC assessment.

### III.    The ALJ's Past Relevant Work Finding

Drawing upon a vocational expert's testimony, the ALJ found that Cunningham could return to her past relevant work as a cashier and "caregiver/housekeeper." Tr. 30. Cunningham submits that her cashier work was performed more than 15 years prior to the ALJ's decision, and was thus not relevant. She also submits that her caregiver work does not constitute past relevant

14 - OPINION AND ORDER

work because she did not earn "substantial gainful activity" (SGA) level earnings, and because

her work was allegedly both sheltered and erratic.  Plaintiff's Opening Brief, 15.

The Commissioner acknowledges that it is "unclear" whether Cunningham performed

cashier work in the past 15 years.  Defendant's Brief, 16.  In order to be considered "past relevant

work," such work must be performed within 15 years of the ALJ's decision.  20 C.F.R. §

416.920(b)(1).  The record supports the Commissioner's concession.  Tr. 102.  For this reason the

ALJ's step four finding regarding Cunningham's cashier work is not sustained.

### a.    *Substantial Gainful Activity*

Cunningham suggests her work as a caregiver did not meet SGA standards and does not

qualify as past relevant work.  Plaintiff's Opening Brief, 11.  The ALJ found that Cunningham

has worked "30 to 35 hours a week" since 2001.  Tr. 26-27.  The ALJ also found that

Cunningham never missed work due to her alleged disability.  Tr. 27.

The record shows Cunningham worked between 15 and 35 hours per week, earning $8.75

per hour, during the period in question.  Tr. 534, 785.  The regulations establish fiscal guidelines

regarding SGA earnings.  20 C.F.R. § 416.974.  The hearing transcript shows the ALJ found

Cunningham worked 113 hours per month.  Tr. 786.  The ALJ's found that Cunningham worked

"30 to 35" hours per week, but made no formal earnings analysis  for this court to review.  Tr. 27.

Therefore, this court cannot consider whether Cunningham's employment did or did not

constitute substantial gainful activity.  However, this court notes that medical improvement is no

longer an issue when SGA is established.  *Katz*, 972 F.2d at 293.

**b.      *Sheltered Employment***

Cunningham fails to show that her caregiver employment constitutes a "sheltered workshop." Work conducted under special supervision in a sheltered workshop environment is not considered past relevant work. 20 C.F.R. § 404.1573(c). Minor modifications do not meet this standard. *Id.*, *see Katz*, 972 F.3d at 294. Cunningham's employer also declined to establish that Cunningham received special supervision in her caretaker job. Tr. 523. Such absent or minimal supervision does not constitute special supervision under the sheltered workshop standard. 20 C.F.R. § 416.973(c)(1). Finally, Cunningham does not establish that she required "irregular" hours under the sheltered workshop standard. 20 C.F.R. § 416.973(c)(2). Cunningham's attempt to establish her caregiver job as "sheltered" fails.

**c.      *Cunningham's Work History and Sustainability***

Cunningham suggests the ALJ's step four finding is invalid because it does not consider her part time work history. Cunningham argues that her part time work history cannot be considered substantial gainful activity for a step four finding. Plaintiff's Opening Brief, 13.

In making a step four finding, it is appropriate to consider the claimant's work as she performed it, rather than relying upon generic job descriptions. SSR 82-61 *1-2 (available at 1982 WL 31387), SSR 82-62 *3 (available at 1982 WL 31386). The nature of a claimant's past relevant work may be established via claimant's testimony or the *Dictionary of Occupational Titles*. SSR 82-62 *3. Here, Cunningham testified that she performed her caregiver work on a part time schedule. Tr. 785. Cunningham's employer additionally reported to the Social Security Administration that she worked 113 hours per month. Tr. 472.

16 - OPINION AND ORDER

Part time work may constitute SGA.  20 C.F.R. § 416.972(a).  Social Security

Administrative Ruling (SSR) 96-8p directly addresses the issue of part time hours in

establishment of past relevant work:

> The ability to work 8 hours a day for 5 days a week is not always
> required when evaluating an individual's ability to do past relevant
> work at step 4 of the sequential evaluation process.  Part-time work
> that was substantial gainful activity, performed within the past 15
> years, and lasted long enough for the person to learn to do it,
> constitutes past relevant work, and an individual who retains the
> RFC to perform such work must be found not disabled.

> SSR 96-8p, n.2 (available at 1996 WL 374184).

The Ninth Circuit agrees, noting that "SSA regulations specifically state that work may be

substantial even if it is done on a part time basis," and finding "this court has held that part time

work may be enough to find SGA."  *Katz*, 972 F.2d at 292 (citing *Keyes v. Sullivan*, 894 F.2d

1053, 1056 (9th Cir. 1990).  Under this analysis, Cunningham's consistent part time work history

during the period in question constitutes past relevant work at step four.

Cunningham finally suggests that a sporadic or erratic work history points to a finding of

disability.  Plaintiff's Opening Brief, 13, citing *Gatliff v. Commissioner of Social Security*

*Administration*, 172 F.3d 690 (9th Cir. 1999).  The *Gatliff* claimant occupied twenty to thirty jobs

within fifteen years and was unable to retain employment due to his personality disorder.  *Gatliff*,

172 F.3d at 691.  Cunningham's work history is not analogous to that scenario.  Cunningham

reports employment between 1986 and the 2004 record closure, changing jobs six times in

eighteen years.  Tr. 67, 231,  624.  *Gatliff* does not apply to the present case.  *See also Lewis v.*

*Apfel*, 236 F.3d 503, 516 (9th Cir. 2001).

17 - OPINION AND ORDER

In conclusion, Cunningham's caregiver work may constitute past relevant work even though it was performed part time, but the ALJ did not properly if that work exceeded SGA-level earnings. This court remands the matter to the Commissioner for further proceedings, emphasizing that in cessation cases, claimant's who achieve SGA earnings are presumed not disabled. *Katz*, 972 F.2d at 293. In such cases the Commissioner is not obligated to show medical improvement. *Id.* If the ALJ determines that Cunningham's caregiver work is not properly construed as past relevant work, he must make additional step seven findings, showing that Cunningham can or cannot perform work in the national economy.

## <u>REMAND</u>

After finding the ALJ did not properly support his step six finding, the court must determine the proper remedy. This court has discretion to remand for further proceedings or for immediate reinstatement of benefits. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). The present record has not been fully developed regarding Cunningham's past relevant work and any work she may be able to do in the national economy.

Further proceedings are necessary for the ALJ to properly evaluate Cunningham's caregiver job as past relevant work and obtain vocational testimony regarding her ability to perform additional work in the national economy, if necessary.

18 - OPINION AND ORDER

**<u>CONCLUSION</u>**

This court finds that the Commissioner's decision that Cunningham did not suffer from disability and is not entitled to benefits under Title  XVI of the Social Security Act is not based upon correct legal standards.  The case is REMANDED FOR FURTHER PROCEEDINGS consistent with this opinion.

IT IS SO ORDERED.

Dated this  __13th__ day of November, 2006.

__/s/ Garr M. King_____
GARR M. KING
United States District Judge

19 - OPINION AND ORDER